

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 3996 | DATE | 12/14/2004 |
| CASE TITLE | Snow vs. Dept of professional Regulation | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants' motion to dismiss is granted in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 16 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. Memorandum opinion distributed in open Court. | docketing deputy initials | 20 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| MW | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANET SNOW, )
)
      Plaintiff, )
)
v. ) No. 04 C 3996
)
)
FERNANDO E. GRILLO, Secretary )
of Department of Financial and )
Professional Regulation of the State of )
Illinois, in his official and personal )
capacities, and AURELIA PUCINSKI, )
FORMER Director of Department of )
Professional Regulation of the State of )
Illinois, in her official and personal )
capacities, )
)
      Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, we grant the motion in its entirety.

## BACKGROUND

Plaintiff Janet Snow ("Snow") was a registered nurse who was licensed by

1

Defendant Department of Professional Regulation of the State of Illinois ("Department"). Defendant Fernando Grillo ("Grillo") is the former Secretary of the Department and current Director of the Department and Defendant Aurelia Pucinski ("Pucinski") is the former Director of the Department. Snow alleges that in December of 2000 the Department initiated an administrative complaint against her, charging her with unprofessional conduct because she failed to administer and document medication on certain occasions. Defendants claim that the Department acted on the basis of information received from Snow's employer. The administrative complaint alleged that Snow had violated the Nursing and Advanced Practice Act ("Nursing Act") 225 ILCS 65/10-45(b)(7) and 68 Ill.Adm.Code § 1300.65(a)(1).

Snow claims that the administrative complaint was mailed to an address in Hana City, but was returned marked "Insufficient Address." Snow claims that she never lived at the address, that she never told the Department that she lived at the address, and that she informed the Department of her correct address. Snow claims that as the administrative proceedings against her progressed, notices continued to be mailed to the improper address. According to Snow in a letter dated March 12, 2001, the Department mailed an order for default for failure to appear at the administrative disciplinary hearing. Snow claims that, despite the fact that she lacked proper notice of the proceedings, on March 1, 2002, the Board of Nursing issued its 20-day Notice of the Findings of Fact, Conclusions of Law and

2

Recommendations to the Director of the Department and that the findings were that Snow had defaulted in regards to the charges because of her failure to respond to them. Snow claims that the 20-day notice was also mailed to the improper address. Snow claims that she did not have notice of the commencement of the administrative proceedings underway against her until June 15, 2002, when she received a letter that was mailed to her correct address.

Snow claims that when she learned of the administrative proceedings against her, she moved for a rehearing. However, according to Snow, on September 19, 2002, despite Snow's request for a rehearing, Pucinski adopted the recommendation of the Nursing Board and suspended Snow's license to practice nursing indefinitely for a minimum of three years. Sometime after the suspension Grillo took over as Director of the Department. Snow claims that Defendants also continued to release false information concerning her suspension in Department records and on its website. Snow acknowledges in her answer to the motion to dismiss that the Department reinstated her license on June 28, 2004, and removed the allegedly defamatory remarks from its website on June 17, 2004.

On June 14, 2004, Snow brought the instant action and in her four count complaint she includes a procedural due process claim alleging violations of 42 U.S.C. § 1983 ("Section 1983") against Defendants in their individual capacities (Count I), a defamation claim against Defendants in their individual capacities (Count II), a claim seeking declaratory relief against the Defendants in their

individual and official capacities (Count III), and a libel claim against Defendants in their individual capacities.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993)). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). However the burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the

4

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 444-45 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

I. Quasi-Judicial Absolute Immunity

Defendants argue that the claims against Pucinski regarding her adoption of the Nursing Board's recommendation are barred under the doctrine of absolute

quasi-judicial immunity. Defendants also argue that the defamation claims in Count II against Pucinski and Grillo are barred under the doctrine of absolute quasi-judicial immunity. The courts have given absolute immunity to "officials whose special functions or constitutional status requires complete protection from suit." *Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668, 671 (7th Cir. 1985)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982))(noting that the courts have accorded absolute immunity to "judges in their judicial functions," "prosecutors in their prosecutorial functions," and "executive officials engaged in adjudicative functions."). The Seventh Circuit employs "a functional approach" in order "[t]o determine whether absolute immunity attaches to the particular conduct of a judicial officer. . . ." *Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 622 (7th Cir. 2002). In determining whether an individual is entitled to absolute immunity the focus should not be on the individual's position. *Id.* Rather, the focus must be on "the nature of the functions he was performing in the case." *Mother Goose Nursery Schools, Inc.,* 770 F.2d at 671. In making such a determination the court must consider: 1) " the historical or common-law basis for the immunity in question," 2) "whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process. . .[and] the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict. . . ," and 3) "whether the official is subject to checks upon abuses of authority, such as the correction of error on

appeal." *Id.*

### A. Claims Against Pucinski Regarding Suspension

Defendants argue that the only alleged action by Pucinski in regards to the license suspension was Pucinski's placement of her signature on the order adopting the findings of the Nursing Board. Defendants also argue that the administrative proceedings are quasi-judicial proceedings in that Nursing Act provides for a judicial hearing before the Nursing Board, and includes an oportunity to be heard through counsel and to engage in discovery and present defenses. Defendants also point our that the Nursing Act allows for judicial review of the administrative ruling. Snow responds by arguing that the Director does not have authority provided to judges such as the aurhotiy to issue subpoena's. Snow also argues that the courts have applied the doctrine of absolute judicial immunity in rare instances and that the general presumption is that an individual is only entitled to qualified immunity.

Snow has done nothing more than assert in a conclusory fashion that the Director's actions are merely administrative actions. However, Snow has not pointed to facts or evidence that would support her position. Under the Nursing Act the Director is charged with reviewing the recommendation from the Nursing Board and then render a final decision on the matter. The Director's role is thus more than merely appending his or her name to a form and we conclude that the Director's decision is adjudicatory in nature. The Nursing Act provides for possible

7

representation by counsel and allows parties to conduct discovery. Also, based on the Director's frequent involvement in employment disciplinary actions its is likely that the Director would frequently be entangled in lawsuits regarding such disciplinary actions. Finally, the Nursing Act provides that Snow can seek judicial review of the Director's actions. Therefore, we conclude that Pucinski was protected by absolute judicial immunity in her actions as Director when she signed the order adopting the Nursing Board's decision to suspend Snow's license.

### B. Defamation Claim

Defendants argue that Pucinski and Grillo are protected by absolute immunity in regards to the defamation claims. Defendants argue that all the Department did was publish on its administrative disposition on it website and an administrative disposition is a matter of public record. For the reasons stated above we agree that the mere publication of the administrative disposition by Pucinski is protected by absolute immunity. We also agree that Grillo was protected by absolute immunity in regards to the defamation claim.

## II. Personal Involvement by Grillo

Defendants move for a dismissal of the individual capacity Section 1983 claim against Grillo. Defendants argue that Grillo did not become Director until long after the order was signed adopting the recommendation of the Nursing Board and

suspending Snow's license and Defendants argue that there are no allegations of personal involvement by Grillo in the alleged wrongdoing. The Seventh Circuit has made it clear that "[t]he doctrine of *respondeat superior* does not apply to § 1983 actions...." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, an individual cannot be held liable under Section 1983 in his individual capacity unless he "participated directly in the constitutional violation." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). For a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Id.* (indicating that a plaintiff must show that the supervisor knew "about the conduct and facilitate it, approve it, condone it, or turn a blind eye.").

Defendants argue that there are not sufficient allegations that Grillo was personally involved in the suspension because Grillo did not become the Director until after Snow's license was suspended. We agree. The order was already in effect at the time that Grillo became Director and Snow has not provided any allegations that would indicate that Grillo was personally involved in a constitutional deprivation. Snow argues that Grillo turned a blind eye to the alleged error, but Snow has failed to allege that Grillo acted in any way improper and the alleged arror

9

was eventually corrected by Defendants. Therefore, we grant the motion to dismiss the individual capacity claim against Grillo.

III. Random and Unauthorized Acts

Defendants argue the alleged mistake concerning Snow's address and the alleged failure to properly notify Snow of the administrative action was a random and unauthorized deviation from established state policy and therefore pursuant to *Parratt v. Taylor*, 451 U.S. 527 (1981) the allegations cannot be used to support a Section 1983 due process claim.

The Seventh Circuit has indicated that "*Parratt* essentially stands for the rule that when predeprivation hearings are impractical because the actions of the state officers were 'random and unauthorized' the state is only responsible for providing postdeprivation remedies." *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 940-42 (7th Cir. 2003). *See also Cushing v. City of Chicago*, 3 F.3d 1156, 1164 (7th Cir. 1993)(stating that "[i]n Parratt, the Court held that a negligent deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim unless the state fails to provide an adequate postdeprivation remedy.");*Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No, 1* 143 F.3d 351, 358 (7th Cir. 1998)(explaining that "the Fourteenth Amendment protects only against deprivations 'without due process of law.'")(quoting*Baker v. McCollan*, 443 U.S.

137, 145 (1979)).

The Seventh Circuit has also indicated that in order "to determine whether it is random and unauthorized involves determining whether the conduct was predictable." *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996)(citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) and *Easter House v. Felder*, 910 F.2d 1387, 1400-01 (7th Cir. 1990));*See also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480-81 (7$^h$ Cir. 1990)(indicating that after "*Zinermon*, [the] court will apply *Parratt* to acts that are 'random and unauthorized,' but not to 'predictable' actions that cause property deprivations" and that after *Zinerman* "a postdeprivation process may be sufficient if deprivation is random and unpredictable."). The Seventh Circuit has explained that in*Zinermon v. Burch*, 494 U.S. 113, 132 (1990) the Court refined the*Parratt* rule holding that "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. . ., [but,] in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty [or property] interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty [or property] interest, postdeprivation remedies might satisfy due process." *Cushing v. City of Chicago*, 3 F.3d 1156, 1164 (7$^h$ Cir. 1993). The Seventh Circuit further explained that in *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) it discussed *Zinerman* and emphasized that "[i]n its most fundamental form, . . .

11

Zinermon holds only that predictable deprivations of liberty or property which flow from authorized conduct are compensable under § 1983." *Cushing v. City of Chicago*, 3 F.3d 1156, 1164 (7th Cir. 1993).

A court determines predictability according to "the amount of discretion afforded the state actor, and whether that discretion is uncircumscribed." *Hamlin*, 95 F.3d at 584, and thus, "[i]f state procedures allow unfettered discretion by state actors, then an abuse of that discretion may be predictable, authorized, and preventable with pre-deprivation process." *Id.* The Seventh Circuit has further explained that "whether an act is random and unauthorized depends on the state's point of view, not the actor's . . .[and that ] [w]here established state policy would provide adequate predeprivation process, and that policy circumscribes the discretion of state officials to act, a single act of a state official--even a high-ranking state official--that violates that established policy is random and unauthorized from the state's perspective." *Clifton v. Schafer*, 969 F.2d 278, 281-82 (7th Cir. 1992).

Defendants argue that in the instant action the Nursing Act and the Illinois Administrative Procedure Act required that proper notice of the administrative complaint be sent to Snow. Defendants argue that it was solely due to a single error by one State employee that caused the notification efforts to fail. Snow acknowledges that applicability of *Parratt*, but argues that under *Zinermon* the *Parratt* rule only applies when predeprivation safeguards are not feasible. However, Defendants correctly point out that in the instant action, not only was Snow provided

with postdeprivation safeguards, Snow was provided with predeprivation safeguards. It was only due to the random and unauthorized act by one State employee that resulted in the unsuccessful notification. The procedure provided for repeated mailed notice to Snow to keep her apprised of the status of the administrative proceedings. Snow acknowledges that State employees mailed out such notices to what they beleived was her address. We also note that Snow was provided with postdeprivation remedies and that the Department has already acknowledged its error and corrected its records. Therefore, we conclude that the Section 1983 due process claim is barred under *Parratt* and its progeny.

## IV. Standing to Bring Declaratory Relief Claim

Defendants argue that Snow lacks standing to bring her claim for declaratory relief (Count III). In Count III Snow seeks a declaration that Defendants violated her due process rights and violated Illinois law. Snow also requests that the court order Defendants to correct the information on Defendants' website. Defendants claim that the information concerning Snow's suspension has been removed from the website. Defendants also claim that the information on the website regarding Snow's prior disciplinary record have been corrected to read that she was never suspended. Snow argues in response merely that she continues to be harmed, but fails to explain what effect an order by the court telling Defendants to correct the website will have if Defendants have already corrected the website information.

13

Snow also argues that, because Defendants did not publically announce the corrections, that she was denied an opportunity to be made whole. However, if Snow prevailed in the instant action, she would possess a judgment by this court indicating that Defendants violated her constitutional rights and/or violated state law. Since, Snow has failed to provide an adequate reason for the continued viability of her declaratory relief claim, we grant Defendants' motion to dismiss the declaratory relief claim (Count III).

## V. Absolute Immunity For Libel Claim

Defendants argue that they are absolutely immune to the libel claim. Public officials have "immunity for their statements made within the scope of their authority" despite the fact that the statement may be considered "defamatory, under Illinois law. . . ." *Horwitz v. Board of Educ. of Avoca School Dist. No. 37,* 260 F.3d 602, 617 (7th Cir. 2001). Such absolute immunity is not defeated even by "a showing of improper motivation or knowledge of the statement's falsity, including malice." *Id.*(quoting *Klug v. Chicago Sch. Reform Bd. of Trs.,* 197 F.3d 853, 861 (7th Cir. 1999)). Absolute immunity is limited to a particular function of a public official and does not blanket an official with immunity, regardless of what function he was serving at the time of the alleged misconduct. *Auriemma v. Montgomery,* 860 F.2d 273, 277 (7th Cir. 1988)(explaining that "[a]bsolute immunity is designed to protect the functions that particular government officials perform, not the government

14

officials themselves."). In the instant action, Snow's allegations indicate that Grillo and Pucinski were acting within the scope of their authority when the information was posted on Defendants' website. We therefore, conclude that Grillo and Pucinski are protected by absolute immunity for the publication of the official disposition on the Defendants' website and in regards to the libel claims.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to dismiss in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 14, 2004